1  ALLAN D. SARVER SBN106282
   LAW OFFICES OF ALLAN D. SARVER
2  16000 Ventura Boulevard
   Suite 1000
3  Encino, California 91436

4  Telephone No.: (818) 981-0581
   Facsimile No.: (818) 981-0026
5  E-Mail: ADS@asarverlaw.com

6  Attorney for Secured Creditor
   Investment Management Company
7

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **LOS ANGELES DIVISION**

12

13  In re                          | CHAPTER 11

14  WILLIAM HOLDINGS, LLC           | CASE NO. 2:22-bk-14708-DS

15      Debtor and Debtor-In-       | **LIMITED OPPOSITION TO DEBTOR'S**
16      Possession                  | **MOTION FOR ORDER AUTHORIZING**
                                    | **INTERIM USE OF CASH COLLATERAL**
17

18                                  | DATE: September 22, 2022
                                    | TIME: 11:30 a.m.
19                                  | CTRM: 1639
                                    |       255 E. Temple Street
20                                  |       Los Angeles, CA. 90012

21  **TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY**

22  **JUDGE, THE DEBTOR, DEBTOR'S COUNSEL, AND ALL OTHER INTERESTED**

23  **PARTIES:**

24      **COMES NOW SECURED CREDITOR,** Investment Management Company,

25  LLC ("IMC") in its limited opposition to Debtor's Motion for Order

26  Authorizing Interim Use of Cash Collateral as follows:

27

28  Limited Opposition to Motion for      -1-
    Use of Cash Collateral

1  I. **STATEMENT OF FACTS:**

2    1.   Debtor filed for relief under chapter 11 of Title 11 of

3  U.S. Code on August 28, 2022.

4    2.   IMC is the holder of a promissory note secured by first

5  trust deed which encumbers the real property commonly known as

6  3256 Dos Palos Dr., Los Angeles, CA, (the "Property").   True and

7  correct copies of said Note and Deed of Trust are Exhibits "A" &

8  "B" hereto.  A Forbearance Agreement was entered into in October

9  27, 2021, extending the loan maturity date to January 1, 2023.

10  (Exhibit "C")

11    3. Kameron Segal transferred the property without IMC's

12  knowledge or consent to and LLC and then to the Debtor,

13  postpetition on August 29, 2022, while the Property was in

14  foreclosure.

15    4. Notice of Debtor's chapter 11 proceeding was given to

16  IMC c/o of Specialized Loan Servicing, which entity is the

17  trustee under the aforementioned Deed of Trust and which until

18  the petition date was administering the foreclosure of the

19  Property which secures the IMC Note.

20    5. The Debtor's proposed treatment of the IMC obligation

21  is described in Exhibit "1" to the cash collateral motion at page

22  31.

23    6.   There is default interest due under the Note and while

24  the proposed monthly payment falls far short of payment of the

25  interest only payment due monthly, all rights to assert the full

26  amount of the IMC claim are hereby expressly reserved, as are all

27  other claims, rights and remedies to which IMC is entitled under

28  Limited Opposition to Motion for
   Use of Cash Collateral          -2-

1 | statement or chapter 11 plan of reorganization.

2 |      7.  To the extent this Court grants Debtor's right to

3 | utilize cash collateral to make payments as described on Exhibit

4 | I, any Order allowing interim  use of cash collateral should

5 | contain a provision allowing for acceptance of payment without

6 | prejudice to pending foreclosure proceedings and preserving all

7 | rights to IMC.  Further, nothing contained herein should be

8 | construed as waiving IMC's right to investigate or challenge any

9 | of the expenses which Debtor asserts apply to the Collateral.

10 | **II. CONCLUSION:**

11 |     For the foregoing reasons, IMC argues for limitations on

12 | any order allowing interim use of cash collateral for the reasons

13 | set forth herein above.

14 |

15 | Dated: September 19, 2022

16 | ALLAN D. SARVER ESQ.
Attorney for Secured Creditor
Investment Management Company

**DECLARATION OF BRIAN BOREN**

I, BRIAN BOREN declare that:

1. If called upon as a witness, I would testify that the within declaration is true and correct of my own personal knowledge.

2. I am the director of acquisitions of Investment Management, LLC, a limited liability company, which is the servicing agent for the secured creditor herein, Investment Management Company, LLC ("IMC") which is the holder of a promissory note secured by a first trust deed (the Loan Documents) which encumbers the real property commonly known as as 3256 Dos Palos Dr., Los Angeles, CA, (the "Property"). True and correct copies of said Note and Deed of Trust are Exhibits "A" & "B" hereto. A Forbearance Agreement was entered into in October 27, 2021, with Kameron Segal extending the loan maturity date to January 1, 2023. (See Exhibit "C")

3. The Property was transferred twice without IMC's knowledge or consent and ultimately to the Debtor, postpetition on August 29, 2022.

4. There is default interest due under the Note and while the proposed monthly payment falls far short of payment of the interest only payment due monthly, all rights to assert the full amount of the IMC claim are hereby expressly reserved, as are all other claims, rights and remedies to which IMC is entitled under applicable State law, or the bankruptcy code which includes, but ~~is not limited to the right to object to any proposed disclosure~~ statement or chapter 11 plan of reorganization.

5. I am familiar with and have reviewed the loan file and documents attached to the Debtor's Objection to Claim and specifically

1  the IMC Note, attachments and Deed of Trust.  I am familiar with said

2  loan documents and same are true and correct copies of those executed

3  by the Debtor's principal when the subject loan was closed.

4         6.   I declare under penalty of perjury that the foregoing is

5  true and correct and that this declaration was executed in the City of

6  Santa Monica, State of California on the 20th day of September, 2022.

8                                    BRIAN BOREN
9                                    Declarant

28  Limited Objection to Motion for Order
    Authorizing Use of Cash Collateral          - 5 -

# EXHIBIT "A"

Loan Number: 1451

# NOTE

JULY 22, 2019                    SANTA MONICA                    CALIFORNIA
[Date]                                [City]                          [State]

3256 DOS PALOS DRIVE, LOS ANGELES, CALIFORNIA 90068
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $330,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I also agree to do all things required in the Security Instrument (defined below) to protect the Property. If you incur an expense because I do not fulfill all obligations under this Note or under the Security Instrument, I promise to pay those expenses under this Note.

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          11.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on          AUGUST 1 2019          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on          JANUARY 1, 2021          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments  ** See attached Interest Only Note Addendum.**
My monthly payment will be in the amount of U.S. $ 3,025.00

## 4. BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE
SECOND LIEN
USSEC.NOT  02/27/19                    Page 1 of 4                    DocMagic *eForms*

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000% of my overdue payment

I will pay this late charge promptly but only once on each late payment.

### (B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me, or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

DocMagic *eForms*



## 9. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
KAMERON SEGAL                          -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE
SECOND LIEN
USSEC.NOT  02/27/19                    Page 4 of 4                    **DocMagic** *eForms*

Loan Number: 1451

# INTEREST-ONLY ADDENDUM
# TO FIXED RATE NOTE
## (Second Lien)

Property Address:   3256 DOS PALOS DRIVE
                    LOS ANGELES, CALIFORNIA 90068

　　　THIS INTEREST-ONLY ADDENDUM ("ADDENDUM") is made this        22nd        day of
JULY,   2019            and is incorporated into and intended to form a part of the fixed rate Note
(the "Note") dated the same date as this Addendum executed by the undersigned and payable to
INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY        (the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3, 4(A), and 6 of the Note. This Addendum does not supersede,
ʳreplace or revise any other Section of the Note.

### 3.　PAYMENTS
　　　(A)　Time and Place of Payments
　　　I will make a payment every month. This payment will be for interest only for the first   17   months (the
"Interest Only Period"), and then will consist of principal and interest.
　　　I will make my monthly payment on the    1st day of each month beginning on        AUGUST 1        ,
2019         . I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note. Each monthly payment will be applied as of its
scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before
Principal. If, on JANUARY 1, 2021     , I still owe amounts under this Note, I will pay those amounts in
full on that date, which is called the "Maturity Date."
　　　I will make my monthly payments at   1507 7TH STREET #344, SANTA MONICA, CALIFORNIA
90401
                                            or at a different place if required by the Note Holder.
　　　(B)　Amount of Monthly Payments
　　　My monthly payment will be in the amount of U.S. $ 3,025.00        for the first   17   months of
this Note, and thereafter will be in the amount of U.S. $ 333,025.00       . The Note Holder will notify me
prior to the date of change in monthly payment.

### 4.　BORROWER'S FAILURE TO PAY AS REQUIRED
　　　(A)　Late Charge for Overdue Payments
　　　If the Note Holder has not received the full amount of any monthly payment by the end of        5
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
　　　10.000 % of my overdue payment of interest during the Interest Only Period. At the end of the Interest
Only Period, the amount of the late charge will be   10.000% of my overdue payment

I will pay this late charge promptly but only once on each late payment.

---

INTEREST ONLY ADDENDUM TO FIXED RATE NOTE (Second Lien)
©2006 DOCMAGIC, INC.
FIO2ND.ATN 04/02/19                     Page 1 of 2

*DocMagic eForms*



**6. BORROWER'S RIGHT TO PREPAY**\*\* See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes.

If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to the Fixed Rate Note.

_____       7/2A/19
Borrower KAMERON SEGAL               Date

INTEREST ONLY ADDENDUM TO FIXED RATE NOTE (Second Lien)
©2006 DOCMAGIC, INC.
FIO2ND.ATN 04/02/19                 Page 2 of 2                    *DocMagic eForms*



# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 1451

Date: JULY 22, 2019

Borrower(s): KAMERON SEGAL

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    22nd    day of
JULY, 2019            , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of INVESTMENT
MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section    4   of the Note is amended to read in its entirety as follows:

4   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.
If within      SIX      (   6   ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds TWENTY                                percent
(    20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge
in an amount equal to      SIX      (   6   ) months' advance interest on the amount by
which the total of my Prepayments within any 12-month period exceeds  TWENTY
percent (      20.000 %) of the original principal amount of the loan.

DocMagic eForms
www.docmagic.com

Prepayment charge in an amount equal to **SIX** ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds **TWENTY** percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first 6 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)     _____ (Seal)
KAMERON SEGAL                   -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                   -Borrower

DocMagic *eForms*
www.docmagic.com



14

# RIDER TO NOTE AND DEED OF TRUST

This RIDER is made this _23RD_ day of _JULY_ , _2019_ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Note, Deed of Trust, Security Deed and any other riders, addendums, or loan related documents of the same or different date, given by the undersigned KAMERON SEGAL, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

__ (the "Borrower") to __INVESTMENT MANAGEMENT COMPANY, LLC__ ( the "Lender"), in the amount of __$330,000.00__to encumber the real property described as __3256 DOS PALOS DRIVE, LOS ANGELES, CA 90068
__. All parties are hereby advised of the following information, disclosures and terms:

1.  The ten percent (10%) late charge shall apply to any late payments of interest, default interest, principal, or balloon payments, which shall be due.

2.  If any payment due under this Note and Deed of Trust is not paid on or prior to the date it is due, the Note and Deed of Trust shall automatically be considered in default, and the entire outstanding principal balance, and all accrued interest thereon, shall at once become due and payable at the option of the Note Holder. If there is any further encumbrance of all or any portion of or interest in the property, the Note and Deed of Trust shall automatically be considered in default, and the entire outstanding principal balance, and all accrued interest thereon, shall at once become due and payable at the option of the Note Holder. The Note Holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance by Note Holder. In the event of any breach or default, as defined in the Note, Deed of Trust, this Addendum, or any other Ride or Addendum, the entire unpaid principal balance shall automatically bear interest at an increased rate known as the "Default Rate", equal to an annual interest rate of (a) Twenty Four percent (24%) or (b) the maximum interest rate allowed by the law.

3.  INITIAL 

Regardless of Lender's option to accelerate the loan or not, and regardless of whether the lender notifies the borrower or records a notice of default at the time of default or at any point during the default period, the loan shall automatically bear interest at the Default Rate immediately upon the time of default until the default has been cured.

INITIAL _____

During a default, Borrower's payment of any amount less than that as calculated at the Default Rate, shall expressly be considered a partial payment, with or without notice to the borrower, and any amount less than that as calculated at the Default Rate shall be added onto the

Re: Loan #_1451_                   Page 1 of 4                   
Initials

# RIDER TO NOTE AND DEED OF TRUST

principal balance of the loan and bear interest at the Default Rate. Lender's failure to collect Default Rate Interest at the time of the default, without prejudice to any notification from Lender of the default, and without prejudice to any notification from Lender of Lender's intent to collect Default Interest, shall not constitute a waiver of Lender's right to collect the Default Rate Interest and Default Interest arrearages at any later time. All sums extended to Borrower, or to others on behalf of Borrower, by the Trustee, Beneficiary or Note Holder shall earn interest at the Default Rate. Should any interest not be paid when due, it shall bear like interest as the principal at the Default Rate. Should any shortfall payment be made, which shall be considered a partial payment less than what is due, the difference between the total amount that should have been paid, and the amount that was paid, shall bear like interest as the principal at the Default Rate. If suit is brought to collect this Note, the Note Holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

4.    **This loan is considered a High Interest Rate or Hard Money Loan.** The rates and terms of this loan may not be competitive with conventional or other private lenders. If the borrower were able to obtain a Conventional Loan, the rates and terms would likely be far more favorable than the terms of this loan. The lender has no set loan rates and the terms of any loan are negotiated on an individual basis. If this loan is not re-paid as per the terms of the Note and Deed of Trust, your property may be placed into foreclosure and you could loose your property at Trustee's Sale.

5.    Parties are encouraged to seek independent legal advice. Neither Lender nor any brokers involved in this transaction are licensed as attorneys or capable of giving legal advice to borrower. Only the borrower's attorney is capable of doing so. Borrower agrees that he/she has had the opportunity and has been encouraged by Lender to consult with legal counsel and that Lender is under no obligation to assist Borrower in obtaining legal advice.

6.    Lender or Lenders' employees may be California Licensed Real Estate Brokers; but they are acting as Principals on their own behalf in this transaction and thus have NO fiduciary responsibility to borrower. Borrower is again encouraged to seek independent legal counsel.

7.    In the event of any legal dispute, all parties agree to submit to the final decision of Arbitration which decision may be entered in any court of competent jurisdiction.

8.    This addendum contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreements or statements relating to such subject matter, and none of the terms and provisions hereof may be waived, amended or terminated except by a written instrument signed by the party against whom enforcement of the waiver, amendment or termination is sought.

9.    The prevailing party, in addition to all other legal or equitable remedies, shall recover its attorney's fees and costs incurred in connection with any such dispute, controversy or claim

Re: Loan #_1451_                    Page 2 of 4                    
Initials

# RIDER TO NOTE AND DEED OF TRUST

resolved in arbitration.

10.  Borrower has entered into the loan transaction, with the intention of making and relying on his or her own investigation of the economic, transactional and legal issues relating to the loan and Borrower is not relying on any statements, representations, or warranties, other than those specifically set forth herein made by Lender or Lender's employees and agents or anyone acting or claiming to act on Lender's behalf, concerning the Loan.

11.  Borrower states that he/she is not under a doctor's care for any serious mental or physical condition and that he/she has never been determined to be incompetent.

12.  Lender reserves the right to make a drive by inspection each time borrower makes a late payment, at the cost of $250 per inspection.

13.  Parties hereby agree per consideration provided within, that the Lender is hereby granted a First Right of Refusal to Purchase the property of said transaction, for the same price and terms as offered to any other buyer. Borrower agrees to notify Lender via certified U.S. Mail, of any such offer and Lender is granted seven (7) days from the date of receipt of said offer to accept said offer.

14.  Borrower has read all of the above and understands the above as well as all other documents presented to him or her in this loan transaction. Borrower declares that he/she has done all necessary due diligence and investigation and consultations that he/she deemed necessary, and that he/she is voluntarily signing these documents. Furthermore, borrower states that he/she is under no duress nor has he/she been coerced by the Lender in this transaction.

15.  Should any terms or requirement in this document, be in conflict with the Note, Deed of Trust, or other loan document, this document shall take precedence and be enforceable as permitted by applicable law.

16.  Should any component of this document be deemed or determined to be unlawful or unenforceable, all other terms and conditions as set forth herein shall still apply.

By signing, this form, borrower acknowledges it has read and understands the entirety of this document:

**KAMERON SEGAL**

X _____   / ____7|24|19____
                    Borrower              /        Date

KAMERON SEGAL, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Re: Loan #_1451_                    Page 3 of 4                    _____
                                                                    Initials

# RIDER TO NOTE AND DEED OF TRUST

PROPERTY ADDRESS

3256 DOS PALOS DRIVE, LOS ANGELES, CA. 90068

Initials

Loan Number: 1451

Date: JULY 22, 2019

Property Address:   3256 DOS PALOS DRIVE
                    LOS ANGELES, CALIFORNIA 90068

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 2429-010-023

*DocMagic eForms*
*www.docmagic.com*



## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 24 IN BLOCK 2 OF TRACT NO. 6768, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 79 PAGE(S) 9 TO 11 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD

APN: 2429-010-023



# EXHIBIT "B"

Recording Requested By:
INVESTMENT MANAGEMENT COMPANY, LLC

And After Recording Return To:
INVESTMENT MANAGEMENT
COMPANY, LLC
1507 7TH STREET #344
SANTA MONICA, CALIFORNIA 90401
Loan Number: 1451

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "**Security Instrument**" means this document, which is dated      JULY 22, 2019      , together with all Riders to this document.
**(B)** "**Borrower**" is   KAMERON SEGAL, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY
BORROWER'S ADDRESS IS 7190 WEST SUNSET BLVD #290, LOS ANGELES, CALIFORNIA 90046.


Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is   INVESTMENT MANAGEMENT COMPANY, LLC

Lender is a   CALIFORNIA LIMITED LIABILITY COMPANY                          organized and existing under the laws of    CALIFORNIA
Lender's address is   1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is   SBS TRUST DEED NETWORK, A CALIFORNIA CORPORATION
31194 LA BAYA DRIVE, SUITE 106, WESTLAKE VILLAGE, CALIFORNIA 91362

**(E)** "**Note**" means the promissory note signed by Borrower and dated      JULY 22, 2019      .
The Note states that Borrower owes Lender   THREE HUNDRED THIRTY THOUSAND AND 00/100
                                    Dollars (U.S. $330,000.00           )

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
ESCROW DIVISION

BY:_____

DocMagic *eForms*
www.docmagic.com

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      JANUARY 1, 2021      .

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ 1 - 4 Family Rider | ☐ Home Improvement Rider | ☐ Revocable Trust Rider |
| ☒ Other(s) [Specify]   Default Interest Rate Rider, Prepayment Rider | | |

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)    Reserved.
(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)    Reserved.
(O)    "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note.
(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
         COUNTY                    of                    LOS ANGELES                    :
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

CALIFORNIA SECOND LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT 09/13/16                    Page 2 of 13.


DocMagic eForms
www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2429-010-023

which currently has the address of    3256 DOS PALOS DRIVE

[Street]

LOS ANGELES                            , California          90068          ("Property Address"):
[City]                                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due

under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; and (b) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Reserved.**

    **4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security instrument that is a lien having priority over this Security Instrument. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

    Except for a lien Borrower disclosed to Lender in Borrower's application or in any title report Lender obtained, Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

    Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

    **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

    If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

CALIFORNIA SECOND LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT  09/13/16

Page 4 of 13

*DocMagic eForms*
*www.docmagic.com*

or lesser coverage than was previously in effect, Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.



Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Reserved.**

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the terms of any mortgage, deed of trust, or other security instrument with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument,

including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CALIFORNIA SECOND LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT 09/13/16

Page 8 of 13

*DocMagic eForms*
www.docmagic.com



**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, to the extent authorized by Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a

condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**24. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

---

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                         , in Book                  ,
Page                 , records of                                  County,
(or filed for record with recorder's serial number                         ,
County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to    INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY
at  1507 7TH STREET #344, SANTA MONICA, CALIFORNIA 90401

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)          _____ (Seal)
KAMERON SEGAL                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

———————————————————— [Space Below This Line For Acknowledgment] ————————————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __CALIFORNIA__ )

County of __LOS ANGELES__ )

On __JULY 24, 2019__ before me, __S.F. BASTOW NOTARY PUBLIC__
     Date                              Here Insert Name and Title of the Notarizing Officer

personally appeared __KAMERON SEGAL__

—————————————————————————————————————————————————— ,
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

S. F. BASTOW
COMM. 2228605
NOTARY PUBLIC CALIFORNIA
Los Angeles County
My Comm. Expires Feb. 8, 2022

Notary Seal

_____
Signature of Notary Public

CALIFORNIA SECOND LIEN DEED OF TRUST
© 2008 DOCMAGIC, INC.
CASEC.DOT  09/13/16
Page 13 of 13


DocMagic eForms
www.docmagic.com

324

Loan Number: 1451

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 22nd day of            JULY, 2019            ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to    INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3256 DOS PALOS DRIVE, LOS ANGELES, CALIFORNIA 90068
[Property Address]

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.  In addition
to the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be
used in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.  All of
the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW.  Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to
the change.  Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

C. SUBORDINATE LIENS.  Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

D. RENT LOSS INSURANCE.  Borrower shall maintain insurance against rent loss in addition to
the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED.  Uniform Covenant 18 is deleted.

F. BORROWER'S OCCUPANCY.  Unless Lender and Borrower otherwise agree in writing, the
first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted.  All
remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

---

MULTISTATE 1-4 FAMILY RIDER
SECOND MORTGAGE
US14.RDR  04/26/19                        Page 1 of 3

*DocMagic eForms*



**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4
Family Rider.

_____(Seal)
KAMERON SEGAL                    -Borrower

37

——————————————— [Space Above This Line For Recording Data] ———————————————

Loan Number: 1451

# BALLOON RIDER

THIS BALLOON RIDER is made this 22nd day of JULY 2019 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3256 DOS PALOS DRIVE, LOS ANGELES, CALIFORNIA 90068
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04

Page 1 of 2

*DocMagic eForms*
*www.docmagic.com*



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon
Rider.

_____  7/24/19        _____
Borrower KAMERON SEGAL            Date           Borrower                      Date


_____                 _____
Borrower                          Date           Borrower                      Date


_____                 _____
Borrower                          Date           Borrower                      Date

MULTISTATE BALLOON RIDER
04/26/04                          Page 2 of 2           DocMagic eForms
                                                        www.docmagic.com



# PREPAYMENT RIDER

Loan Number:  1451

Date:  JULY 22, 2019

Borrower(s):  KAMERON SEGAL

THIS PREPAYMENT RIDER (the "Rider") is made this    22nd      day of  JULY            ,
2019                , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
INVESTMENT MANAGEMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY
("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

3256 DOS PALOS DRIVE, LOS ANGELES, CALIFORNIA 90068
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE

The Note provides for the payment of a prepayment charge as follows:

### 4    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

If within  SIX            (    6   ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds  TWENTY
percent (    20.000       %) of the original principal amount of the loan, I will pay a

CALIFORNIA PREPAYMENT RIDER - SPP
(CIVIL CODE PROVISION)
12/13/05                                Page 1 of 2

DocMagic eForms
www.docmagic.com

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first    6    months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

| | |
|---|---|
| 7/24/19 | |
| Borrower KAMERON SEGAL          Date | Borrower          Date |
| | |
| Borrower          Date | Borrower          Date |
| | |
| Borrower          Date | Borrower          Date |



DocMagic *eForms*
www.docmagic.com

# EXHIBIT "C"

42

# FORBEARANCE AND FULL RELEASE AGREEMENT

### LOAN #1451 – 3256 Dos Palos Drive, Los Angeles, CA 90068

This FORBEARANCE AND FULL RELEASE AGREEMENT (this "Agreement"), is entered in to as of this 27th day of **OCTOBER, 2021** (the "Effective Date"), by and KAMERN SEGAL, as "Borrower", and INVESTMENT MANAGEMENT COMPANY, LLC, as "Lender", parties to that Note and Deed of Trust both dated JULY 22ND, 2019, in original principal amount of $330,000.00 (the "Loan"), encumbering the "Property" located at: 3256 Dos Palos Drive, Los Angeles, CA 90068, and recorded on: July 26, 2019.

**NOW, THEREFORE,** in consideration of the mutual promises set, the Borrower and Lender hereby agree as follows:

1) As of the January 1, 2021, the Loan has matured. This date was known as the "Maturity Date" in the loan documents.

2) The borrower is otherwise current and has been making monthly payments at the stated interest rate of 11%.

3) Lender agrees to postpone the filing of a Notice of Default and other Foreclosure related documents on the SOLE basis of a Maturity Default, which was previously set to occur on January 1, 2021, per the terms of the Original Note, UNTIL January 1, 2023, under the following terms and conditions.

    a. In order to induce Lender to forbear and not file a foreclosure, Borrower has agreed to pay Lender a forbearance fee of $6,600.00. This fee shall not credit towards any outstanding principal, interest, or other outstanding fees and costs.

4) No further postponements or arrangements have been promised or guaranteed except as herein stated.

5) This Agreement shall in no way invalidate minimize or diminish the full force and effect of the Note and Deed of Trust, nor does it modify any of the other terms or conditions found in the Note and Deed of Trust securing said property, except for the "Maturity Date", which shall now be mutually agreed upon to be January 1, 2023.

6) **Independent Legal Advice.**

    a. Each of the Parties hereby acknowledges that it has been afforded the opportunity to obtain independent legal advice and confirms by the execution and delivery of this Agreement that they have either done so or waived their right to do so in connection with the entering into of this Agreement.

Borrower Initials_____    Lender Initials_____    1

# FORBEARANCE AND FULL RELEASE AGREEMENT

LOAN #1451 – 3256 Dos Palos Drive, Los Angeles, CA 90068

7) **General Release; Covenant Not to Sue.**

(a) In consideration of, among other things, Lender's execution and delivery of this Agreement, the Borrower or "Releasor" hereby forever waives, releases and discharges, to the fullest extent permitted by law, each Releasee (as hereinafter defined) from any and all claims (including, without limitation, crossclaims, counterclaims, rights of set-off and recoupment), actions, causes of action, suits, debts, accounts, interests, liens, promises, warranties, damages and consequential damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses or claims whatsoever (collectively, the "Claims"), that such Releasor now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising, whether arising at law or in equity, against Lender, and each of its affiliates, subsidiaries, shareholders and "controlling persons" (within the meaning of the federal securities laws), and their respective successors and assigns and each and all of the officers, directors, employees, agents, attorneys and other representatives of each of the foregoing (collectively, the "Releasees"), based in whole or in part on facts, whether or not now known, existing on or before the Effective Date, that relate to, arise out of or otherwise are in connection with: (i) any or all of the Loan Documents or transactions contemplated thereby or any actions or omissions in connection therewith, (ii) any aspect of the dealings or relationships between or among the Borrower, on the one hand, and Lender, on the other hand, relating to any or all of the documents, transactions, actions or omissions referenced in clause (i) hereof, or (iii) any aspect of the dealings or relationships between or among any or all of the equity holders of the Borrower, on the one hand, and Lender, on the other hand, but only to the extent such dealings or relationships relate to any or all of the documents, transactions, actions or omissions referenced in clause (i) hereof.

(b) In connection with such releases, the Borrower acknowledge that they are aware that they or their attorneys or others may hereafter discover claims or facts presently unknown or unsuspected in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Claims being released pursuant to Section 6(a) hereof. Nevertheless, it is the intention of the Borrower in executing this Agreement to fully, finally, and forever settle and release all matters and all claims relating thereto, which exist, hereafter may exist or might have existed (whether or not previously or currently asserted in any action) constituting Claims released pursuant to Section 6(a) hereof.

Borrower Initials _____KS_____   Lender Initials _____        2

# FORBEARANCE AND FULL RELEASE AGREEMENT

### LOAN #1451 – 3256 Dos Palos Drive, Los Angeles, CA 90068

(c) In entering into this Agreement, the Borrower has consulted with, and has been represented by, legal counsel and expressly disclaims any reliance on any representations, acts or omissions by any of the Releasees and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth above do not depend in any way on any such representations, acts and/or omissions or the accuracy, completeness or validity hereof.

(d) Each of the Borrower hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by any Credit Party pursuant to Section 6(a) hereof. If any Credit Party violates the foregoing covenant, the Borrower agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all reasonable attorneys' fees and reasonable out-of-pocket expenses incurred by any Releasee as a result of such violation.

(e) The provisions of this Section shall survive the termination of this Agreement, the Loan Documents, and payment in full of the Obligations.

8) **Severability.**

a) The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction. If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

_12/3/21_

Borrower: Kamern Segal / DATE

Lender: Investment Management Company, LLC / DATE

Borrower Initials_____ Lender Initials_____          3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

16000 Ventura Blvd., Suite 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled LIMITED OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/20/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger**   michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Arnold L Graff**   agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net;jpowell@wrightlegal.net
- **Mitchell B Ludwig**   mbl@kpclegal.com, kad@kpclegal.com
- **Noreen A Madoyan**   Noreen.Madoyan@usdoj.gov
- **Allan D Sarver**   ADS@asarverlaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Johnny White**   JWhite@wrslawyers.com, jlee@wrslawyers.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 09/20/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 09\20\2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Deborah J. Saltzman            Served Via Federal Express
United States Bankruptcy Court
255 E. Temple Street, Suite 1634
Los Angeles, CA. 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 09/20/2022 | M. Swanston | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**